RECORD NO. 13-2321
CROSS-APPEAL NO. 13-2362

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

TRIAD PACKAGING, INCORPORATED; LOUIS WETMORE,

*Plaintiffs-Appellants/Cross-Appellees,*

v.

SUPPLYONE, INCORPORATED,

*Defendant-Appellee/Cross-Appellant,*

v.

DURHAM BOX COMPANY, INCORPORATED,

*Third Party Defendant-Appellant/Cross-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT STATESVILLE

_____

**PRINCIPAL AND RESPONSE BRIEF OF DEFENDANT-APPELLEE AND
CROSS-APPELLANT**

John S. Kingston
Thompson Coburn LLP
One US Bank Plaza, Suite 2700
St. Louis, MO 63101
Tel: (314) 552-6464
jkingston@thompsoncoburn.com

Mark W. Kinghorn
McGuireWoods LLP
201 North Tryon St., Suite 3000
Charlotte, NC 28202
Tel: (704) 343-2102
mkinghorn@mcguirewoods.com

*Counsel for Defendant-Appellee and Cross-Appellant*

February 7, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-2362__      Caption: _Triad Packaging, Inc., et al. v. SupplyOne, Inc._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_SupplyOne, Inc._____
(name of party/amicus)

_____

 who is __Appellee/Cross-Appellant__, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                            ☐ YES ☑ NO
        If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ John S. Kingston          Date:      2/7/2014

Counsel for: SupplyOne, Inc.

## CERTIFICATE OF SERVICE
**************************

I certify that on _____2/7/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Matthew K. Rogers, Esq.
Law Offices of Matthew K. Rogers, PLLC
200 1st Avenue, N.W.
P.O. Box 9096
Hickory, NC 28601

/s/ John S. Kingston                    2/7/2014
        (signature)                        (date)

- 2 -

# TABLE OF CONTENTS

PAGE

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................iv

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF ISSUE.....................................................................3

STATEMENT OF THE CASE...............................................................3

STATEMENT OF FACTS ....................................................................6

    A.    The Parties to the Asset Purchase Agreement. ....................................6

    B.    The April 29, 2008 nonbinding letter of intent. ....................................7

    C.    The declining sales of Mr. Wetmore's companies and the parties' agreement to a reduced purchase price ....................................9

    D.    The October 8, 2008 Asset Purchase Agreement .............................10

    E.    Mr. Wetmore's breach of the APA's purchase price adjustment provisions..........................................................13

    F.    Mr. Wetmore's claims against SupplyOne for failing to close in July 2008 and not paying him $3.5 million dollars ..........................................................15

    G.    Mr. Wetmore's breach of contract claims...........................................17

    H.    The district court's summary judgment order in favor of SupplyOne ..........................................................17

    I.    The May 2013 Jury Trial...................................................................18

    J.    The jury's apportionment of funds held in escrow ...........................23

K.    The district court denied the parties post-trial motions.......................24

L.    SupplyOne sued Mr. Wetmore in Pennsylvania for his July 2013 refusal to honor contractual obligations that accrued on July 1, 2013........................................................................25

SUMMARY OF ARGUMENT ...............................................................27

STANDARD OF REVIEW ......................................................................28

ARGUMENT ...........................................................................................28

I.    The damage award for Mr. Wetmore should be set aside because contractual damages are not available where there is no evidence of damages...........................................28

II.    Given the admitted existence of an enforceable contract, the district court properly granted judgment for SupplyOne ..............................................................................31

III.    The district court properly granted summary judgment on Mr. Wetmore's fraud claim where Mr. Wetmore adduced no cognizable evidence of reliance or fraudulent intent ....................32

IV.    The district court properly granted summary judgment on Mr. Wetmore's claim that SupplyOne violated the North Carolina Unfair Trade Practice Act by "breaching" an expressly non-binding Letter of Intent ...................................35

V.    The district court properly rejected Mr. Wetmore's motion for judgment as a matter of law based on a "prior uncured material breach" where SupplyOne presented evidence that the claimed breach was cured before it subject breach was cured before it sought Mr. Wetmore's performance ...............................................................................37

CONCLUSION .........................................................................................39

CERTIFICATE OF COMPLIANCE.......................................................40

-ii-

CERTIFICATE OF SERVICE ................................................................................41

# TABLE OF AUTHORITIES

PAGE

**Federal Court Decisions**

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ....................................................... 33, 36

*Chaudhry v. Gallerizzo*,
    174 F.3d 394 (4th Cir. 1999) ........................................................ 28

*Frank M. McDermott, Ltd. v. Moretz*,
    898 F.2d 418 (4th Cir. 1990) ........................................................ 33

*Gairola v. Com. of Va. Dep't of Gen. Servs.*,
    753 F.2d 1281 (4th Cir. 1985) ..................................................... 28, 29

*Gunning v. Cooley*,
    81 U.S. 90 (1929) ........................................................................ 29

*Morgan's Ferry Productions, LLC v. Rudd*,
    18 Fed. Appx. 111(4th Cir. 2001) ............................................... 30

*Ocheltree v. Scollon Productions, Inc.*,
    335 F.3d 325 (4th Cir. 2003) ........................................................ 30

*Ralston Purina Co. v. Edmunds*,
    241 F.2d 164 (4th Cir. 1957) ........................................................ 29

*Scheduled Airlines Traffic Offices, Inc. v. Objective Inc.*,
    180 F.3d 583, 590 (4th Cir. 1999) ............................................... 34, 36

*White v. Cnty. of Newberry*,
    985 F.2d 168 (4th Cir. 1993) ........................................................ 28

**State Court Decisions**

*Foley v. L & L Int'l, Inc.*,
    364 S.E.2d 733 (N.C. Ct. App. 1988) ......................................... 33

*Forsyth Mem'l Hosp. v. Contreras*,
    421 S.E.2d 167 (N.C. Ct. App. 1992)............................................................35

*McAdoo v. Univ. of N. Carolina at Chapel Hill*,
    736 S.E.2d 811(N.C. Ct. App. 2013).......................................................30, 31

*Sullivan v. Mebane Packaging Group, Inc.*,
    581 S.E.2d 452 (N.C. Ct. App. 2003) ..................................................33, 34, 36

*Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*,
    234 S.E.2d 605 (N.C. 1977) ........................................................................31

*Whitfield v. Gilchrist*,
    497 S.E.2d 412 (N.C. 1998) ........................................................................32

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2321
Cross-Appeal No. 13-2362
(5:10-cv-00005-RLV-DCK)

Triad Packaging, Inc. and Louis
Wetmore,
           *Plaintiff-Appellants/*
           *Cross-Appellees,*

v.

SupplyOne, Inc.,

           *Defendant-Appellee/*
           *Cross-Appellant,*

v.

Durham Box Company, Inc.,

           *Third PartyDefendant-*
           *Appellant/*
           *Cross-Appellee.*

**Principal and Response Brief of Defendant-Appellee and Cross-Appellant**

## <u>JURISDICTIONAL STATEMENT</u>

The United States District Court for the Western District of North Carolina had jurisdiction pursuant to 28 U.S.C. § 1332. On September 26, 2013, the district court entered its Memorandum of Decision and Order and Judgment ("Order").

-1-

Wetmore timely appealed the District Court's Order on October 25, 2013.  This Court has Jurisdiction pursuant to 28 USC § 1291, which governs appeals from Final Judgment.

## STATEMENT OF ISSUES

1.    On cross appeal, did the district court err by finding substantial evidence supported the finding that cross-appellee suffered damages where neither the cross-appellee nor the district court could identify any evidence supporting that finding?

2.    Given the existence of an enforceable contract, did the district court properly grant judgment for appellee on appellants' quasi-contract claim?

3.    Did the district court properly grant summary judgment on appellants' fraud claim where the express terms of the document appellant contended it was fraudulently induced to execute precluded any reliance claim?

4.    Did the district court properly grant summary judgment on appellants' claim under the North Carolina Unfair Trade Practice Act based on an alleged breach of a non-binding letter of intent?

5.    Did the district court properly deny appellants' motion for judgment where the record supporting the jury's breach of contract and damage verdicts in favor of appellee included testimony from multiple witnesses?

## STATEMENT OF THE CASE

This lawsuit arises from an October 8, 2008, Asset Purchase Agreement (the "APA"), pursuant to which Louis Wetmore sold the assets of his two companies, Triad Packaging, Inc. and the Durham Box Company, Inc. to SupplyOne.

SupplyOne paid Mr. Wetmore[1] $2,951,918 for the two corrugated container companies. JA 107, 2091. Under the APA, that purchase price was subject to post-closing adjustments based on the book value of the current assets delivered at closing (i.e., accounts receivable and inventory) and the quality of those assets (i.e., whether the accounts receivable could be collected and the inventory could be sold).

In early-2009, a dispute arose as to (1) whether Mr. Wetmore owed $286,568 or $51,429 for undelivered current assets under the APA's price adjustment provisions and (2) the extent of his obligations to buy back uncollected accounts receivable and unsold inventory. In December 2009, Mr. Wetmore filed this lawsuit.

Claiming that SupplyOne deceived or somehow bullied him into accepting an inadequate purchase price for his assets when he signed the APA, Mr. Wetmore asserted claims against SupplyOne for unjust enrichment, fraud, violation of the North Carolina Unfair Trade Practices Act ("UTPA"), and breach of contract. SupplyOne counterclaimed for breach of the APA's purchase price adjustment

---

[1] For the convenience of the reader, Appellants Triad Packaging, Inc. ("Triad"), Durham Box Company, Inc. ("Durham"), and Louis Wetmore are referred to collectively as Mr. Wetmore unless otherwise indicated.

provisions.[2]  The district court granted (1) summary judgment for SupplyOne on Mr. Wetmore's unjust enrichment claim, finding the admitted existence of an express contract precluded that claim; (2) summary judgment for SupplyOne on Mr. Wetmore's fraud claim, finding Mr. Wetmore could not have signed a contract in October 2008 based in reliance on the allegedly deceptive representation that the same contract would be signed in July 2008; and (3) summary judgment on Mr. Wetmore's UTPA claim, finding that it was based on an alleged breach of a non-binding letter of intent, and without evidentiary support.  The parties' competing breach of contract claims were tried to a jury in May 2013.

The jury determined that Mr. Wetmore had breached the APA's purchase price adjustment provisions.  The jury determined that SupplyOne had not breached its employment agreement with Mr. Wetmore and had not breached various other contractual provisions identified by Mr. Wetmore.  The jury, however, found that SupplyOne had breached certain ancillary provisions of the APA (described by the district court as "technical breaches by SupplyOne," JA 3218) and the duty of good faith and fair dealing.  Mr. Wetmore did not present any evidence of damages caused by SupplyOne's "technical breaches" or the duty

---

[2] SupplyOne also asserted a breach of warranty claim, alleging that Mr. Wetmore falsely warranted that the purchased accounts receivable were collectible and that the purchased inventory was sellable.  Because SupplyOne's breach of warranty damages were duplicative of its breach of contract damages, SupplyOne voluntarily dismissed its warranty claim at trial.

of good faith and fair dealing.  His counsel did not request damages for those alleged breached during closing argument.  Nevertheless, the jury found that SupplyOne's breaches had caused Mr. Wetmore damages.

After trial, SupplyOne renewed its motion for judgment as a matter of law on the jury's unsupported finding of damages to Mr. Wetmore.  Without identifying any evidence that damages existed, the district court denied SupplyOne's motion.  The district court likewise denied Mr. Wetmore's renewed motion for judgment as a matter of law and various similar motions.  This appeal followed.

## STATEMENT OF FACTS

### A.    The parties to the Asset Purchase Agreement

SupplyOne manufactures and sells cardboard packaging and related products, including corrugated cardboard products.  SupplyOne operates through a number of local subsidiaries throughout the United States.  From time to time, SupplyOne has acquired local manufacturers to expand into new markets or increase its presence in existing markets.  JA 519.  SupplyOne's purchases of Mr. Wetmore's companies was one such acquisition.

Mr. Wetmore was the owner and majority shareholder of Triad and Durham, which sold corrugated boxes in North Carolina and South Carolina until Mr. Wetmore sold their assets to SupplyOne.

In 2007, Mr. Wetmore and SupplyOne began discussing the possibility of SupplyOne purchasing the assets of his companies.  In April 2008, the parties executed a Letter of Intent to guide the negotiation and preparation of the purchase agreement.

**B.     The April 29, 2008 nonbinding letter of intent.**

On April 25, 2008, SupplyOne presented Mr. Wetmore with a proposed letter of intent (the "Letter of Intent").  Mr. Wetmore signed the Letter of Intent on April 29, 2008.  JA 85-92.  When he signed, Mr. Wetmore was represented by counsel.[3]

By its express terms, the Letter of Intent was non-binding.  In a section captioned "***Non-binding Nature of this Letter***," the letter stated,  "The parties have determined that this letter is *non-binding* and will serve as a guide to the negotiation and preparation of the definitive agreement." JA 90 (emphasis added).

The letter further confirmed that it was a statement of present mutual intent: "It is further understood that this proposal constitutes a ***statement of our present mutual intentions*** with respect to the proposed transaction and does not contain all

---

[3] This fact is disputed.  At trial, Mr. Wetmore stated that he was not represented by Mr. Rogers in April 2008.  When confronted with court filings demonstrating that his statement was false, Mr. Wetmore conceded that he was represented by counsel at that time, but denied that counsel was representing him with respect to the sales of his companies in April 2008.   Mr. Wetmore was then impeached with documents confirming that counsel was in fact representing him in a transactional capacity in April 2008.  *See generally* May 20, 2013 Trial Tr.  944:13-947:20.

matters upon which agreements must be reached in order for the transaction to be completed." JA 90 (emphasis added).

Finally, the letter instructed that it could be terminated at any time without cause and without liability: "This letter may be terminated by either party with or without cause and without liability . . . . " JA 91. If he terminated the Letter of Intent, Mr. Wetmore would be free to sell his companies' assets to any buyer at any price.

Although the parties initially intended that SupplyOne would purchase the companies' assets by July 31, 2008, the Letter of Intent expressly and repeatedly addressed the possibility that the deal might close after July 31, 2008—or might never close at all. JA 89-90. If the purchase **was not** completed by July 31, 2008, the Letter of Intent provided that Mr. Wetmore (1) would not be bound by a provision prohibiting him from attempting to sell Triad and Durham to other parties during the due diligence period ("If a definitive agreement has not been executed on or before July 31, 2008 (of if this letter is terminated sooner), however, the agreements contained under the paragraph 'Non-solicitation' shall expire and be of no further forced and effect . . . ."), and (2) could demand the return of confidential due diligence material ("In the event a definitive agreement is not reached or a closing is not consummated on or before the earlier of the date on which this letter terminates and July 31, 2008, at the Companies' request

-8-

SupplyOne shall return promptly to the Companies all documents and destroy data as required under the Confidentiality Agreement."). JA 90.

When he executed the Letter of Intent, Mr. Wetmore had an ownership interest in one of his companies' suppliers, Pinnacle Corrugated LLC ("Pinnacle"). JA 627-29. Mr. Wetmore's companies were bound by "take or pay" supply contracts with Pinnacle, requiring them to purchase raw material from Pinnacle at prices above those paid by SupplyOne subsidiaries. *See* May 14, 2013 Trial Tr. 246:25-247:21; 431-432.

Mr. Wetmore agreed to extricate his companies from the Pinnacle supply agreement when he signed the Letter of Intent in April 2008. JA 89. But he still had not done so as of June of that year. SupplyOne did not want to start the expensive due diligence process until Mr. Wetmore had fulfilled his obligations to extricate his companies from the Pinnacle supply agreement. JA 627-29. The parties therefore agreed that the target closing date would be pushed back to September 15, 2008. JA 2551 (June 24, 2008, addendum to April 25, 2008, Letter of Intent).

## C. The declining sales of Mr. Wetmore's companies and the parties' agreement to a reduced purchase price

When the parties executed the Letter of Intent, sales for Mr. Wetmore's companies were projected to exceed $10.9 million dollars on an annual basis. JA 644. By September 11, 2008, however, those projected sales had fallen to $8

million dollars.  JA 644.  Accordingly, SupplyOne reduced its proposed purchase price to $2,920,000, down from the $3.5 million dollars envisioned in the Letter of Intent.[4]  JA 644.  Mr. Wetmore accepted SupplyOne's proposed  price reduction. JA 644.

When Mr. Wetmore accepted SupplyOne's proposed price reduction, he was under no obligation to sell his companies' assets to SupplyOne.  He could terminate the Letter of Intent and retain his assets "without cause and without liability . . . ."  JA 91.  After termination, he could sell to any buyer willing to pay more than $2,920,000.

## D.    The October 8, 2008 Asset Purchase Agreement

The parties executed the APA on October 8, 2008.  Under that agreement, SupplyOne paid Mr. Wetmore $ 2,951,918 for the assets of his two companies.[5]

The APA contained an integration clause:  "This Agreement, together with the other Transaction Documents, sets forth the entire understanding of the parties

---

[4] This fact is contested.  Mr. Wetmore contends SupplyOne intended to reduce its purchase price long before April 2008, as part of a pre-planned, but ill-defined conspiracy to defraud Mr. Wetmore.  But the record is devoid of any evidence of such an intent.  As the district court recognized when it granted summary judgment for SupplyOne on Mr. Wetmore's fraud claim, "there is no evidence supporting Plaintiffs' allegation that the original $3.5 million deal struck in April 2008 was a ruse." JA 1172.

[5] The APA lists a purchase price of $3,094,350 subject to a reduction at closing to reflect Mr. Wetmore's decision to retain $142,432 in accounts receivable and inventory related to one of his companies' customers, AP Exhaust, with which Mr. Wetmore was involved in litigation.  JA 107, 109, 2091.

-10-

hereto with respect to the Transactions and **supersedes all prior agreements or understandings among the parties regarding those matters**."  [6]    JA 135 (emphasis added).

The APA contained two post-closing purchase price adjustment provisions: (1) a "Net Current Asset Adjustment" or "True Up" provision requiring Mr. Wetmore to repay SupplyOne for any shortfall between an agreed-upon minimum net current asset value and the value of the net current assets actually delivered (Section 2.7(a)); and (2) an "Adjustment for Unsold Inventory and Uncollected Accounts Receivable"  or "Buy Back" provision requiring Triad to repurchase uncollected accounts receivable and obsolete inventory 180 days after purchase (Section 2.7(b)).  JA 109.

In relevant part, the "True Up" provision reads as follows: "If, as of such Closing Date, Net Current Assets are less than the Minimum Net Current Asset Amount, the Seller Parties shall pay to the Buyer an amount sufficient to restore the aggregate Net Current Assets of the Companies to the Minimum Net Current Asset Amount (the 'Net Current Asset Deficiency')."  JA 108.  The "True Up"

---

[6] The APA defined "Transaction Documents" as the APA itself, an Escrow Agreement, a Lease Agreement, Employment Agreements under which Mr. Wetmore and a Durham employee would become SupplyOne employees, a Convertible Unsecured Subordinated Promissory Note giving Mr. Wetmore an option to take an ownership interest in SupplyOne in the event of an IPO, and Subordination Agreements related to that Note.  The April 29, 2008 Letter of Intent was not listed as a Transaction Document.

-11-

provision instructed that the "'Minimum Net Current Asset Amount' shall mean $727,000." [7]  JA 108.

In relevant part, the "Buy Back" provision read as follows:

To the extent that any Accounts Receivable remain uncollected, and/or any Inventory remains unsold and is classified as obsolete, as of the date that is 180 days after the Closing, the Buyer shall assign and deliver to the Seller Parties, at such Seller Parties' cost, the entire unsold Inventory and/or uncollected Accounts Receivable as promptly as possible. The Buyer shall also provide to the Seller Parties a statement setting forth the value of such unsold Inventory and uncollected Accounts Receivable delivered or to be delivered to the Seller Parties, and the Seller Parties shall reimburse the Buyer for the entire value of such returned items within five business days after receiving the statement from the Buyer.  JA 109 (APA Section 2.7(b)).

The APA also contained a "best efforts" provision related to sales and collection efforts: "Subject to [the price adjustment provisions] above, the Buyer shall use its best efforts to sell the Inventory and collect all Accounts Receivable assumed as part of the Purchased Assets." JA 128.

The APA referenced an employment agreement between Mr. Wetmore and SupplyOne pursuant to which he would receive a commission based on certain sales benchmarks.

---

[7] At trial, Mr. Wetmore argued that the $727,000 Minimum Net Current Asset Amount should have been reduced by $142,432 to reflect his retention of the accounts receivable and inventory related to AP Exhaust.  The jury's damage award to SupplyOne suggests it rejected that argument.

-12-

To facilitate the APA's price adjustment provisions, the purchase price included a $175,000 escrow agreement (the "Escrow Agreement"). Under the Escrow Agreement, SupplyOne deposited the sum of $175,000 into an escrow account. This fund was described in the Escrow Agreement as "a portion of the consideration to be paid to Sellers under the Purchase Agreement in order to provide a source of funds from which Buyer may obtain certain amounts payable to Seller or Buyer (whichever the case may be) pursuant to the terms of the APA." JA 356. Although the Escrow Agreement expired in January 2010, the escrowed funds are still being held in an interest-bearing escrow account. The purchase price also included a $100,000 convertible subordinated unsecured promissory note (the "Promissory Note") in favor of Mr. Wetmore, which matured on October 8, 2013. JA 2696.

### E.    Mr. Wetmore's breach of the APA's purchase price adjustment provisions

Under the "True Up" provision, SupplyOne was required to present Mr. Wetmore with a "Closing Date Balance Sheet" by December 8, 2008—i.e., within sixty days of closing. SupplyOne did not meet that deadline. Instead, SupplyOne presented Mr. Wetmore with a Closing Date Balance sheet on February 9, 2009.[8]

---

[8] Mr. Wetmore has represented to this Court that SupplyOne "never provided the Closing Date Balance Sheet." Opening Brief at 39. That representation is not correct. In fact, Mr. Wetmore's counsel admitted to the district court that the

-13-

*See* May 20, 2013 Trial Tr. 1110-11111 (testimony of Debbie Morgan, Controller of SupplyOne's Rockwell, North Carolina subsidiary); JA 1113; JA 2705-09 (Plaintiffs' Trial Exhibit 118).  Virtually all of the financial information reflected in the Closing Date Balance Sheet was provided by Mr. Wetmore.[9]  JA 1113.

At Mr. Wetmore's request, and in deference to the fact that his wife was extremely ill in early 2009, SupplyOne did not seek to address Mr. Wetmore's obligations under the APA's "True Up" provision until April 2009.  JA 1113.

Accompanied by his accountant and his lawyer, Mr. Wetmore met with representatives of SupplyOne on April 10, 2009, to review the Closing Date Balance Sheet with Debbie Morgan, the Controller of SupplyOne's Rockwell, North Carolina subsidiary and John Caruso, SupplyOne's Vice President of Financial Operations.  JA 2711.  A month later, on May 6, 2009, Mr. Wetmore sent SupplyOne a letter (prepared with the assistance of his lawyer and his accountant) taking issue with SupplyOne's "True Up" calculation.  JA 2711.  Mr. Wetmore presented his own competing calculation, which resulted in a $51,429 net current

---

Closing Date Balance Sheet was presented (although he inaccurately claimed it was not presented until April).  According to Mr. Wetmore's counsel, the first time the Closing Date Balance Sheet "was actually presented was in a face-to-face meeting with Mr. Wetmore and Mr. Balke and [Mr. Wetmore's counsel] which occurred on April 10."  May 21, 2013 Trial Tr. 1215:7-16.

[9] The Closing Date Balance Sheet did reflect a physical inventory count conducted by SupplyOne and documents related to unrecorded liabilities that were generated after the October 8, 2008, closing date.  JA 1113.

asset shortfall as opposed to the $286,568 shortfall calculated by SupplyOne. In that May 6, 2009, letter, Mr. Wetmore did not suggest that he lacked information to address SupplyOne's calculation. JA 2711-13. SupplyOne responded to Mr. Wetmore's letter on May 14, 2009, which reconciled the parties' competing calculations to demonstrate that Mr. Wetmore owed $194,508 under either calculation and offered to seek a third-party review to resolve the remaining amount in dispute. JA 2719-21.

On May 20, 2009, SupplyOne asked Mr. Wetmore to comply with his obligations under the APA's "Buy Back" provision. JA 2722-23. Questioning SupplyOne's collection and sales efforts, Mr. Wetmore refused to repurchase the accounts receivable and inventory. For months thereafter the parties corresponded and met in an effort to resolve how much Mr. Wetmore was willing to pay under the APA's purchase price adjustment provision.

In December 2009, while the parties were still negotiating Mr. Wetmore's refusal to pay, he filed suit against SupplyOne.

## F.    Mr. Wetmore's claims against SupplyOne for failing to close in July 2008 and not paying him $3.5 million dollars

Mr. Wetmore asserted a quasi-contract claim, a claim for fraud, and a claim that SupplyOne violated the UTPA. These claims all rested on two core complaints: SupplyOne's failure to buy Mr. Wetmore's companies' assets in July 2008 and

SupplyOne's failure to pay Mr. Wetmore $3.5 million dollars for those assets when it bought them in October 2008.

The essence of Mr. Wetmore's quasi-contract claim was that SupplyOne had been unjustly enriched when it obtained assets Mr. Wetmore contended were worth $3.5 million dollars for under $3 million dollars.

Mr. Wetmore's fraud claim rested solely on his assertion that SupplyOne misled Mr. Wetmore by representing that the purchase would close by July 31, 2008. Testifying as a corporate representative for Triad, Mr. Wetmore explained his fraud claim as follows:

> Q: Mr. Wetmore, before you signed the APA on October 8, 2008 did any SupplyOne employee, officer, or agent make any false or misleading statements to you?
>
> A: The only thing that would be categorized as perhaps as misleading would be the anticipated closing date, but other than that the answer is no.

JA 245-46.

Mr. Wetmore's UTPA claim rested on the same basic factual allegations as his fraud and unjust enrichment claim. Essentially, he contends SupplyOne tricked him into believing the deal would close in July 2008 and unfairly refused to pay him the $3.5 million purchase price referenced in the Letter of Intent. Describing his alleged damages for his unfair trade practice claim during discovery, Mr.

-16-

Wetmore simply incorporated by reference his breach of contract damage disclosures under Federal Rule of Civil Procedure 26.  JA 182-85.

## G.     Mr. Wetmore's breach of contract claims

Mr. Wetmore originally contended SupplyOne breached the APA in three ways:  (1) failing to close the deal by July 31, 2008, (2) failing to use best efforts to collect accounts receivable, and (3) failing to use best efforts to sell inventory.  JA 256.  At trial, Mr. Wetmore belatedly expanded his contract claims to include claims that SupplyOne breached the APA by failing to produce the Closing Date Balance Sheet within 60 days of closing, failing to provide certain tax documents within 90 days of closing, failing to "correctly adjust" certain inventory and accounts receivables totals, failing to provide Mr. Wetmore post-closing access to information, and breaching the implied covenant of good faith and fair dealing.  JA 2764-65.

Mr. Wetmore also alleged that SupplyOne breached his employment agreement by failing to pay him commissions owed under that agreement.

## H.     The district court's summary judgment order in favor of SupplyOne.

On February 19, 2013, the district court granted judgment in favor of SupplyOne on (1) Mr. Wetmore's unjust enrichment claim, finding the quasi-contractual claim was barred by the admitted existence of an express contract; (2) Mr. Wetmore's fraud claim, finding no evidence of reliance or intent; and (3) Mr.

-17-

Wetmore's claim under the North Carolina Unfair Trade Practices Act, finding "the record does not support Plaintiffs' contention that SupplyOne set out to deceive or treat Plaintiffs unfairly."  The case proceeded to trial on May 13, 2013.

## I.      The May 2013 Jury Trial

This lawsuit was tried to a jury from May 13, 2013 through May 23, 2013. Mr. Wetmore presented evidence through May 21.  During trial, the jury received evidence regarding SupplyOne's efforts to collect accounts receivable and sell inventory purchased under the APA.[10]  The jury also received evidence regarding the parties' competing calculations of the net current assets Mr. Wetmore provided to SupplyOne when the deal closed on October 8, 2008.[11]

At no point during the trial did Mr. Wetmore introduce any documentary or testimonial evidence of damages related to (1) SupplyOne's failure to produce a Closing Date Balance Sheet within 60 days of closing, (2) SupplyOne's failure to

---

[10] *See, e.g.,* May 20, 2013 Trial Tr. 1117-1122, 1142 (Debbie Morgan explaining how SupplyOne managed to collect all but $65,000 of $1,800,000 in accounts receivable purchased from Mr. Wetmore and testifying regarding the amount owed by Mr. Wetmore under the "Buy Back" provision); May 21, 2013 Trial Tr. 1241-1285 (George Ruth, Vice President of Operations for SupplyOne's Rockwell, North Carolina subsidiary testifying regarding SupplyOne's efforts to sell inventory, its determination regarding the obsolescence of that inventory, and the amount owed).

[11] *See, e.g.,* May 16, 2013 Trial Tr. 638-653 (William Laughlin, SupplyOne's Chief Financial Officer explaining SupplyOne's "True Up" calculations and the amount owed).  *See also, e.g.,* JA 2711-2713, 2719-2721 (exhibits related to SupplyOne's "True Up" calculation).

provide allocation of purchase price documentation (IRS Form 8594) within 90 days of closing (APA § 2.8), (3) SupplyOne's failure to provide post-closing access to information (APA §6.11), or (4) the implied covenant of good faith and fair dealing. In fact, Mr. Wetmore did not submit any documentary or testimonial evidence in support of a claim for damages based on **<u>any</u>** alleged breach of the APA itself.

Mr. Wetmore's accountant—David Balke—testified at trial. But he offered no testimony regarding damages. JA 1931-1975. Louis Wetmore provided the only testimony related to his damages claims. In its entirety, Mr. Wetmore's damage testimony was limited solely to his claimed damages for SupplyOne's alleged breach of the Employment Agreement and claims related to the Promissory Note and Escrow Agreement—both of which the district court kept from the jury.

In its entirety, Mr. Wetmore's damage-related testimony reads as follows:

Q:  Now, Mr. Wetmore, have you – from considering the information available to you, including your understanding of Sales, have you determined pursuant to that Employment Contract, how much money you should have earned during the four year capture period in that employment contract?

MR. KINGSTON: Objection.

THE COURT:    Overruled.

A.  Well, of course it's hard to say for sure, because I don't really have any hard and fast numbers. But based upon my knowledge of the accounts and my belief of what could have happened, it would be in the 100 to $120,000 per year.

Q.     And were you paid any of that money?

A.     No.

Q.     Were you provided any information that would allow you to determine specifically how much you earned?

A.     No.

Q.     With regard to the promissory note, have you calculated how much money if SupplyOne had paid the promissory note, that money would be due and owing as of the beginning of this trial?

A.     Yes.  The note was interest only, so the interest accrued through may 15th of this year would have been $29,977.  And then of course the note was $100,000.  So the total would be 129,977.

Q.     Based on your consideration of the balance sheet items, the net current asset calculations, and all the information that you've been able to assess since the beginning of this lawsuit, how much from the escrow account do you believe that you're owed?

A.     It's really hard to say at this point, but based upon one of the offers, if you will, that I made to SupplyOne in good faith, it would be 175 minus $53,000 and some change.

**Q.     Is that what you are asking this jury to consider to be the damages owed to you in this lawsuit?**

**A.     Yes.**

**Q.     And that escrow amount, that promissory note, and $120,000 per year, does that make up the damages you claim that you've been damaged as a result of SupplyOne's breaches of the contract?**

**A.     Yes.**

-20-

*See* JA 2123-2124 (emphasis added).

Mr. Wetmore introduced only two documents into evidence at trial that he contended supported his damage claims: (1) Plaintiffs' Exhibit 26, a SupplyOne spreadsheet that—according to Mr. Wetmore—demonstrates damages arising from SupplyOne's alleged breach of Mr. Wetmore's Employment Agreement, JA 2493; and (2) Plaintiffs' Exhibit 146, the Escrow Agreement underpinning Mr. Wetmore's testimony that he was entitled to $123,271 of the $175,000 in escrow. JA 2740.

Except those listed above, Mr. Wetmore did not introduce a single document related to damages for any claims for breach of the APA.

Prior to jury charge (and deliberations), the parties agreed that the disposition of funds held in escrow under the Escrow Agreement and payment under the Promissory Note would be decided by the Court consistent with the jury verdict. JA 2222-2223.

Like Mr. Wetmore himself, Mr. Wetmore's counsel did not request damages for breach of the APA during closing argument—but instead requested payment related to the Promissory Note and the Escrow Agreement, ***neither of which was the subject of a breach of contract claim submitted to the jury***:

> And when you fill out those verdict forms on all of the – on the first verdict form with regard to Triad Packaging's claim, in that damages amount, I want you to put 253,548. That's the amount that I just said should be allocated

from the Escrow Agreement plus the amount of the Promissory Note. With regard to Mr. Wetmore's employment, the verdict form for Mr. Wetmore's Employment Agreement, you find that you should enter yes and you should enter $480,000, which is less than he would be entitled to if the actual numbers were accumulated.

JA 2315-16 (Matthew Rogers, arguing on behalf of Mr. Wetmore). Notwithstanding the parties' prior agreement to leave the Escrow Agreement and Promissory Note to the district court, Mr. Wetmore's counsel specifically requested that the jury address payment of the escrowed funds during his closing argument—referring to Mr. Wetmore's May 6, 2009 proposal that SupplyOne retain $51,429 and Mr. Wetmore retain $123,571 of the $175,000 held in escrow. JA 2315-16. *See also* JA 2711-13.

The jury ultimately returned a verdict that Mr. Wetmore had breached both the APA's "True Up" provision and its "Buy Back" provision, that SupplyOne had not breached its Employment Agreement with Mr. Wetmore, that SupplyOne had not breached its best efforts obligations or its obligations to correctly adjust various inventory and accounts receivable balances. The jury concluded that SupplyOne had breached the APA by failing to produce the Closing Date Balance Sheet within 60 days of closing, failing to provide tax documents within 90 days of closing, failing to provide Mr. Wetmore post-closing access to information, and breaching the implied covenant of good faith and fair dealing. JA 2764-70. The district court described these breaches as "technical breaches by SupplyOne." JA 3218.

The jury determined that SupplyOne had sustained $332,605 in damages because of Mr. Wetmore's contractual breaches. JA 2770. As discussed below, it determined that Mr. Wetmore was entitled "contractual damages" of $211,363 and entitled to $123,271 of the $175,000 held in escrow (this determination was consistent with Mr. Wetmore's testimony when asked how much he was owed from escrow "175 minus $53,000 and some change"). JA 2765.

## J.    The jury's apportionment of funds held in escrow

On the verdict form, the jury categorized damages due Mr. Wetmore as $211,363 in "contractual damages" and $123,271 payable from escrow. After reviewing the verdict and consulting with counsel, the district court requested that the jury further clarify its verdict in this respect. Noting that the jury broke the figure out and labeled one sum "escrow" and one "contractual damage," the district court requested an additional indication as to what the $123,271 represents, or "what claim that sum relates to." In response, the jury presented the Court with a handwritten attachment to the original verdict sheet stating "Monies requested by [Mr. Wetmore] in escrow of $123,571 be paid" and "Damage for breach of contract of $211,363 be paid to [Mr. Wetmore]." JA 2766-2767.

The district court further determined that "in light of the evidence, the way the case was presented to the jury, and in light of the instructions as a whole, the most reasonable interpretation of the jury's verdict is that the "escrow" and

-23-

"contractual damages" figures merge. The district court found it "entirely rational to conclude that the jury understood that the escrow funds were to be apportioned; and that the apportionment to the Seller, Buyer, or both, was dependent upon the Section 2.7 Post-Closing Adjustments to Purchase Price found by the jury."

The district court determined not to disturb that portion of the jury's verdict and entered a judgment directing that Mr. Wetmore be awarded $123,571 of the escrowed funds with the remainder going to SupplyOne. JA 3226-27.

## K.    The district court's denial of the parties' post-trial motions.

SupplyOne moved for judgment as a matter of law at the close of Mr. Wetmore's case. After the trial, SupplyOne renewed its motion with respect to the jury's contractual damage award. SupplyOne argued that there was not a single sentence of testimony or a single piece of paper introduced into evidence at trial regarding damages under the APA—and further argued that Mr. Wetmore could not identify any such evidence. The district court denied SupplyOne's motion.

In its Memorandum and Order denying SupplyOne's motion the district court did not identify any testimony supporting the jury's damage award for Mr. Wetmore. The district court also did not identify any documentary evidence supporting the jury's damage award. Without identifying any evidence supporting the contention that contractual damages existed, the district court found that

SupplyOne's "technical breaches" could have impaired Mr. Wetmore's ability to calculate or mitigate such damages.

## L.    SupplyOne's lawsuit for a July 2013 breach of contract

Section 10 of the APA obliges the parties to indemnify each other for damages, including attorneys' fees, related to a breach of the APA.  Under Section 10, no indemnification obligations arise until the indemnifying party "the indemnitor" receives either a "Claim Notice" or a "Liquidated Claim Notice" from the party seeking indemnification.  Where a party has an indemnification claim relating to a matter which has not been resolved as of the date of a "Claim Notice", the party is required to estimate that amount of the claim and specify that the claim has not yet been liquidated.  Within 60 days of the final resolution of the matter giving rise to the claim—i.e., when the party seeking indemnification knows the amount of the claim—the party must give a "Liquidated Claim Notice."  Once a "Liquidated Claim Notice" is given, the indemnitor has 15 days to decide whether to pay or dispute the claim.  If the indemnitor fails to dispute the claim in writing within 15 days, the claim is conclusively deemed the indemnitor's obligations.

Shortly after answering and filing a counterclaim in this lawsuit, SupplyOne presented Mr. Wetmore with an "Unliquidated Claim Notice."  SupplyOne's claim was unliquidated because it could not know what fees it would incur related to Mr. Wetmore's breach of contract.  As discussed above, a jury confirmed SupplyOne's

contention Mr. Wetmore breached the APA in May of 2013.  On July 1, 2013, SupplyOne presented Mr. Wetmore a "Liquidated Claim Notice" for the fees it had incurred because of Mr. Wetmore's breach of contract and requested that Mr. Wetmore honor his indemnification obligations.  Mr. Wetmore refused to honor his indemnification obligations and SupplyOne filed suit for breach of contract in the United States District Court for the Eastern District of Pennsylvania, where its headquarters are located.

# SUMMARY OF ARGUMENT

The district court erred when it denied SupplyOne's motion for judgment as a matter of law on the issue of damages under Federal Rule of Civil Procedure 50(b). In denying SupplyOne's motion, the district court presupposed the existence of damages and then found "substantial evidence" supporting those assumed damages exist because SupplyOne's "technical breaches" of contract made the assumed damages difficult to calculate or mitigate. Rule 50(b) would become meaningless if a court could sustain damage awards without identifying a single line of testimony or piece of paper supporting that award. Because there is no evidence supporting the jury's finding that damages exist, the damage award should be set aside.

Mr. Wetmore's claims for unjust enrichment, fraud, and unfair trade practices all rest on the same fundamental misconceptions: (1) that a Letter of Intent that is explicitly non-binding and terminable at will, which expressly contemplates a delayed or cancelled deal, provides a basis for a claim of deception or fraud and (2) that having executed a contract to sell the assets of his companies for approximately $3 million dollars, Mr. Wetmore still had some right to the $3.5 million purchase price articulated in the non-binding letter of intent. The district court properly recognized that Mr. Wetmore's claims were without merit and

disposed of them at the summary judgment stage.  Mr. Wetmore has articulated no basis for reversing that decision.

Finally, Mr. Wetmore's contention that he was entitled to judgment as a matter of law on SupplyOne's counterclaims should be rejected because it rests on his false assertion that SupplyOne did not present a Closing Date Balance Sheet. The jury received evidence and Mr. Wetmore's lawyer admitted that SupplyOne did in fact present a Closing Date Balance Sheet before seeking his compliance with the APA's price adjustment provisions.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 *de novo*.  *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 404-05 (4th Cir. 1999).  Where substantial evidence does not support the jury's finding, reversal is mandated.  *See Gairola v. Com. of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).  If evidence in support of the jury's finding has been introduced, it must be viewed in the light most favorable to the nonmovant.  *See Chaudhry*, 174 F.3d at 404-05.

## ARGUMENT

**I.    The damage award for Mr. Wetmore should be set aside because there is no evidence of damages.**

A Rule 50(b) motion must be granted if a district court determines that substantial evidence does not support the jury's findings. *See White v. Cnty. of*

-28-

*Newberry*, 985 F.2d 168, 173 (4th Cir. 1993).  Where there is no evidence to support a finding on which a party has the burden of proof, there is no question that the substantial evidence standard has not been met.  *See Gairola*, 753 F.2d at 1285 (stating that the "question is not whether there is **no evidence**, but whether there is **sufficient evidence** upon which a jury can properly proceed to reach a verdict" and instructing that a "**mere scintilla of evidence is not enough** to defeat a motion for a directed verdict.") (emphasis added) (citing *Ralston Purina Co. v. Edmunds*, 241 F.2d 164, 167 (4th Cir. 1957) and *Gunning v. Cooley*, 281 U.S. 90, 94 (1929)).

Here, the jury found the existence of damages to Mr. Wetmore arising from SupplyOne's "technical breaches" of the APA and a breach of the duty of good faith and fair dealing.  There was not one line of testimony or one piece of paper introduced at trial supporting that finding.  Mr. Wetmore presented no evidence suggesting SupplyOne's failure to provide a Closing Date Balance Sheet within 60 days of closing cost Mr. Wetmore a single dollar.  Likewise, Mr. Wetmore did not present any evidence of damages sustained as a result of SupplyOne's failure to provide tax documents within 90 days of closing, failure to provide Mr. Wetmore post-closing access to information, or breach of any implied covenants.

Mr. Wetmore presented speculative testimony that he was entitled to $480,000 in lost commissions under the Employment Agreement, which the jury found SupplyOne did not breach.  He presented testimony that he was entitled to

$129,977 under a Promissory Note that the district court had previously ruled did not present a jury question (*see* Trial Tr. May 22, 2013 1488:7-1489:19).  And he presented testimony that he was entitled to $123,271 share of the funds held in escrow under the Escrow Agreement, which the jury awarded to him.  He presented no other damage evidence.

Without identifying any evidence suggesting the existence of damages, the district court denied SupplyOne's Rule 50(b) motion.  The district court based its denial on its speculation that the jury may have concluded that SupplyOne's "technical breaches" made Mr. Wetmore's damages more difficult to calculate or mitigate.  The district court did not address the basis for the jury's finding that any damages existed in the first place.  A judicial presumption is an improper substitute for evidence on an issue that Mr. Wetmore was required to prove when he presented his case to the jury.  *Accord Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 336 (4th Cir. 2003) (setting aside punitive damage award where court "combed the record" and could find no evidence supporting such damages).

Under North Carolina law, "speculative damages that cannot be calculated with reasonable certainty are not recoverable." *McAdoo v. Univ. of N. Carolina at Chapel Hill*, 736 S.E.2d 811, 822 (N.C. Ct. App. 2013), *review denied*, 740 S.E.2d 465 (N.C. 2013).  *See also Morgan's Ferry Productions, LLC v. Rudd*, 18 Fed. App'x 111, 114 (4th Cir. 2001) ("North Carolina law does not allow an award of

damages based upon speculation or conjecture.") (affirming judgment as a matter of law where plaintiff's "evidence of damages … was insufficient") (citing *Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 234 S.E.2d 605, 607 (N.C. 1977)). Here the jury was required not just to speculate about the amount of damages, it was forced to speculate about their very existence.

By necessity, the jury's award of $211,363 for "contractual damages" under the APA must have been "based upon speculation or conjecture." *See McAdoo*, 736 S.E.2d at 822. There was no evidence that any contractual damages existed— much less that such damages existed in the amount of $211,363. Accordingly, the district court erred by finding substantial evidence supported the contractual damage award against SupplyOne. This Court should reverse that determination and set aside the "contractual damage" award against SupplyOne.

## II. Given the admitted existence of an enforceable contract, the district court properly granted judgment for SupplyOne.

Mr. Wetmore contends SupplyOne was unjustly enriched because it paid approximately $3 million dollars instead of $3.5 million dollars for the assets of his companies on October 8, 2008. Appellants' Br. at 34. Mr. Wetmore's unjust enrichment claim ignores the fact that he had no obligation to sell his company for $3 million dollars. If he believed his companies were worth more than $3 million dollars, he was free to terminate the Letter of Intent and to keep the companies or sell them to someone else. Mr. Wetmore chose to sell his companies to SupplyOne

-31-

and signed a contract to that effect. His *post hoc* desire for a more favorable contract provides no basis for an unjust enrichment claim. Indeed, the very existence of the contract that Mr. Wetmore contends facilitated SupplyOne's unjust enrichment precludes his quasi-contractual claim.

Under North Carolina law, a quasi-contract claim can be asserted "only in the *absence* of a valid express contract." *Whitfield v. Gilchrist*, 497 S.E.2d 412, 415 (N.C. 1998) ("Only in the absence of an express agreement of the parties will courts impose a quasi-contract or a contract implied in law in order to prevent an unjust enrichment."). Given the undisputed existence of an applicable express contract, the district court properly rejected Mr. Wetmore's quasi-contract claims. This Court should affirm that determination.

## III.    The district court properly granted summary judgment on Mr. Wetmore's fraud claim where Mr. Wetmore adduced no evidence of reliance or fraudulent intent.

Like his unjust enrichment claim, Mr. Wetmore's fraud claim is based on his *post hoc* desire to secure a more favorable agreement than that articulated by in the APA, which he signed while represented by counsel on October 8, 2008. According to Mr. Wetmore, SupplyOne "committed fraud to reduce the purchase price and implement more favorable terms." Appellants' Br. at 35. Mr. Wetmore contends SupplyOne deceived him into signing the APA. But the only false or misleading statement he contends SupplyOne made before he signed was that the deal would

-32-

close in July 2008.  JA 245.  The district court properly rejected Mr. Wetmore's fraud claim because the Letter of Intent itself precludes any reliance on that anticipated closing date.

Reasonable reliance is essential to any fraud claim.  *See Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990) ("It is well settled under North Carolina law . . . that a complaint claiming fraud is fatally defective unless it alleges detrimental reliance, and damages proximately flowing from such reliance, with particularity.") (citing *Foley v. L & L Int'l, Inc.*, 364 S.E.2d 733, 736 (N.C. Ct. App. 1988)).

The only misleading representation Mr. Wetmore ascribed to SupplyOne is the alleged assertion that the purchase would close by July 31, 2008.  That representation cannot sustain his fraud claim because the Letter of Intent expressly recognized and addressed the possibility that the deal might close after that date,  or might never close. Given that recognition, there can be no reasonable reliance.

Under North Carolina law, furthermore, a fraud claim cannot survive where the plaintiff could have discovered the alleged misstatements by reading the documents related to the transaction at issue.  *See Sullivan v. Mebane Packaging Grp., Inc.*, 581 S.E.2d 452, 459 (N.C. Ct. App. 2003); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998) ("North Carolina courts recognize that . . . if a plaintiff had an alternative source for the information that is

-33-

alleged to have been concealed from or misrepresented to him, his ignorance or reliance on any misinformation is not reasonable.") (citations omitted). *Accord Scheduled Airlines Traffic Offices, Inc. v. Objective Inc.,* 180 F.3d 583, 590 (4th Cir. 1999) (affirming dismissal of fraud claim based on alleged misrepresentation that was contradicted by written agreement) (applying Virginia law).

In *Sullivan v. Mebane Packaging Grp., Inc.*, for example, the plaintiff claimed fraud based on misrepresentations related to his rights under a shareholder's agreement. 581 S.E.2d at 458. Noting the plaintiff's receipt of a document summarizing his rights under the agreement, the North Carolina Court of Appeals affirmed summary judgment for the defendant on that fraud claim. *Id.* at 459. Because the plaintiff could have determined his rights under the agreement by reviewing the summary document, the court found, "any reliance on alleged misrepresentations or concealments with respect to [the] plaintiff's material rights under the Agreement was not reasonable and cannot form the basis of plaintiff's fraud claim." *Id.*

Mr. Wetmore's fraud claim was functionally identical to the fraud claims rejected in *Sullivan*. Its claim is based entirely on an alleged representation that the APA would be executed by July 31, 2008. JA 245. But Mr. Wetmore could not have reasonably relied on any representation that the APA would be executed by July 31, 2008 when he (1) signed a Letter of Intent describing the parties' rights if

the deal was not completed by that date and (2) signed a letter agreement on June 24, 2008, extending the anticipated closing date to September 15, 2008.  JA 85-92, 2551.

The district court did not err in granting summary judgment for SupplyOne. This Court should affirm.

## IV.    The district court properly granted summary judgment on Mr. Wetmore's claim that SupplyOne violated the North Carolina Unfair Trade Practice Act by "breaching" an expressly non-binding Letter of Intent.

Mr. Wetmore's argument that the district court erred by granting summary judgment on his claim that SupplyOne violated the North Carolina Unfair Trade Practices Act ("UTPA") rests on two allegations: (1) SupplyOne "deceived [Mr. Wetmore] and used unfair bargaining power to form the APA," Appellants' Br. at 50, and (2) Mr. Wetmore contends the fact that SupplyOne filed a breach of contract lawsuit in the United States District Court for the Eastern District of Pennsylvania in June 2013 somehow retroactively invalidates the district court's February 2013 summary judgment decision on his December 2009 UTPA claim. Appellants' Br. at 54-57 ("Post verdict actions show that [SupplyOne] committed and continues to commit unfair and deceptive trade practices prohibited by North Carolina law.").

Allegedly deceptive conduct under the North Carolina Unfair Trade Practices Act must have a tendency to deceive.  *See Forsyth Mem'l Hosp. v.*

*Contreras*, 421 S.E.2d 167, 169-170 (N.C. Ct. App. 1992) (citation omitted). Mr. Wetmore contends SupplyOne deceived him into believing the parties' deal would close in July 2008. But, as discussed above, SupplyOne could not have deceived Mr. Wetmore into believing the deal would close in July of 2008 when the Letter of Intent expressly contemplated that the deal might close later, or might never close at all. *Accord Sullivan*, 581 S.E.2d at 459; *Scheduled Airlines*, 180 F.3d at 590; *Broussard*, 155 F.3d at 341. The Letter of Intent explicitly contemplates the possibility of a delayed closing or no closing at all. Mr. Wetmore's UTPA claim is as fatally flawed as his fraud claim. The district court did not err in granting judgment for SupplyOne on that claim.

Mr. Wetmore's contention that SupplyOne's June 2013 lawsuit retroactively invalidates the district court's February 2013 summary judgment order is nonsensical. Mr. Wetmore has cited no authority that could sustain his contention that a Pennsylvania company filing a breach of contract claim against a North Carolina resident in a federal court seated in Pennsylvania constitutes an unfair trade practice—much less authority suggesting that action taken in June 2013 can retroactively invalidate a February 2013 decision regarding a cot filed in December 2009.

**V.    The district court properly rejected Mr. Wetmore's motion for judgment as a matter of law based on a "prior uncured material breach" where SupplyOne presented evidence that the claimed breach was cured before it subject breach was cured before it sought Mr. Wetmore's performance.**

Mr. Wetmore contends SupplyOne's "prior **<u>uncured</u>** breach relieved [Mr. Wetmore] of any further obligations" under the APA.    Appellants' Br. at 4. (emphasis added).    Mr. Wetmore's entire argument rests on his assertion that SupplyOne did not present a Closing Date Balance Sheet.    Appellants' Br. at 40 ("Since [SupplyOne] **<u>never provided</u>** a 'Closing Date Balance Sheet,' no obligation to pay an 'Net Current Asset Deficiency' arose.") (emphasis added). Mr. Wetmore's assertion is false.

The inaccuracy of Mr. Wetmore's assertion that SupplyOne did not present a Closing Date Balance Sheet is demonstrated by both the evidence presented at trial and by his own lawyer's admissions to the district court.    The jury received evidence that the Closing Date Balance Sheet was provided in February of 2009— months before April 2009—when SupplyOne asked Mr. Wetmore to comply with his contractual obligations.    Deborah Morgan, Chief Financial Officer of SupplyOne's subsidiary in Rockwell, North Carolina, testified that the Closing Date Balance Sheet was presented to Mr. Wetmore in February of 2009. *See* Trial Tr. May 20, 2013 1110-1111.    Moreover, Mr. Wetmore's counsel admitted to the

district court that the evidence adduced at trial shows the Closing Date Balance

Sheet was provided no later than April 10, 2009:

> The evidence shows, Your Honor, that only on January 28 was that
> closing date balance sheet circulated amongst SupplyOne and at that
> time it appears that there was a net asset – an excess of net assets
> based on Mr. Caruso's calculation. The evidence also adduced from
> Mrs. Morgan and the letters that we presented to Your Honor establish
> that the first time that was actually presented was in a face-to-face
> meeting with Mr. Wetmore and Mr. Balke and myself which occurred
> on April 10.

Trial Tr. May 21, 2013 1215:7-16. Consistent with his lawyer's admission and

Ms. Morgan's testimony, the exhibits Mr. Wetmore presented at trial confirm that

SupplyOne presented the subject balance sheet before requesting that Mr. Wetmore

comply with his contractual obligations under the APA. *See* JA 2711 (May 6,

2009 letter from Mr. Wetmore referencing April 10 meeting in which balance sheet

was presented to Mr. Wetmore, Mr. Rogers, and Mr. Balke) and JA 2714 (May 20,

2009 letter from Mr. Wetmore further disputing SupplyOne's balance sheet

calculations).

The evidence is that SupplyOne provided a Closing Date Balance Sheet in

February of 2009. SupplyOne did not ask Mr. Wetmore to honor his contractual

obligations until April 2009. The district court did not err in denying Mr.

Wetmore's argument that he was not obliged to honor his contractual obligations

because he never received a Closing Date Balance Sheet.

## CONCLUSION

This Court should partially reverse the judgment of the district court and remand with instructions to set aside the "contractual damage" award of $211,363 against SupplyOne, Inc.  This Court should affirm the judgment of the district court in all other respects.

This, the 7th day of February, 2014.

Respectfully submitted,

THOMPSON COBURN LLP

By  */s/ John S. Kingston*
   John S. Kingston
   One US Bank Plaza
   St. Louis, Missouri  63101
   Tel:  314-552-6000
   jkingston@thompsoncoburn.com

Mark W. Kinghorn
MCGUIREWOODS LLP
201 North Tryon St., Suite 3000
Charlotte, North Carolina  28202
Tel:  704-343-2102
mkinghorn@mcguirewoods.com

*Counsel for Defendant-Appellee and Cross-Appellant*

-39-

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 13-2362          **Caption:** Triad Packaging, Inc., et al. v. SupplyOne, Inc.

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]      this brief contains _____ 8,454 _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]      this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]      this brief has been prepared in a proportionally spaced typeface using Microsoft Word _____ [*identify word processing program*] in 14 point Times New Roman _____ [*identify font size and type style*]; **or**

   [ ]      this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) John S. Kingston _____

Attorney for SupplyOne, Inc. _____

Dated: 2/7/2014 _____

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, this is to certify that the undersigned has this day served the foregoing **PRINCIPAL AND RESPONSE BRIEF OF DEFENDANT-APPELLEE AND CROSS-APPELLANT** on all parties to this cause, as listed below, by filing said document with the Electronic Case Filing System for the United States Court of Appeals for the Fourth Circuit.

> Matthew K. Rogers
> Law Offices of Matthew K. Rogers, PLLC
> 200 1st Avenue, N.W.
> P.O. Box 9096
> Hickory, North Carolina 28601
> rogersmk@mrbizlaw.com

This, the 7th day of February, 2014.

> By: /s/ Mark W. Kinghorn
> Mark W. Kinghorn
> MCGUIREWOODS LLP
> 201 North Tryon St., Suite 3000
> Charlotte, North Carolina  28202
> Tel:  704-343-2102
> mkinghorn@mcguirewoods.com